United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-2848

Johnny Doby,                                  *
                                             *
           Appellee,                          *
                                             *
      v.                                      *
                                             *
Hickerson, Dr., Mental Health Services,       *
ADC;                                          *    Appeal from the United States
                                             *    District Court for the Eastern District
           Defendant-Appellant                *    of Arkansas.
                                             *
Margaret L. Capel, Mrs., Counselor,           *
Mental Health Services, ADC, sued as          *
Mrs. Capel; Oglesby, Dr., Mental Health       *
Services, ADC, sued as Dr. Ogelesby;          *
Tommy Vestal, Mental Health Services,         *
ADC, sued as Vessel.                          *
                                             *
           Defendants.                        *

_____

Submitted: April 17, 1997
Filed:  July 14, 1997

_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Johnny Doby is a former prisoner who brought this action under 28 U.S.C. § 1983 claiming that Dr. Robin Hickerson and other medical staff at the Arkansas Department of Correction (ADC) violated his due process rights by administering antipsychotic medications to him without his consent. The district court,[1] adopting the proposed findings and conclusions of the magistrate judge,[2] concluded that Hickerson violated Doby's right to due process and awarded Doby $9,500 in compensatory damages. We affirm.

## I.    BACKGROUND

In early 1990, Doby was transferred to the ADC's Special Programs Unit (SPU), which houses inmates with psychiatric problems. On February 2, Doby was seen by Hickerson, a psychiatrist employed by the SPU, after he began demonstrating bizarre behavior and making a number of delusional statements. Hickerson found that Doby was belligerent, was suffering from persecutorial delusions, was neglecting his personal hygiene, and was unable to concentrate. Hickerson described Doby as psychotic, and was concerned that he might hurt someone or provoke attacks by other inmates.

Hickerson prescribed two antipsychotic medications for Doby: Haldol, a short-term drug to be given as needed in emergency situations, and Prolixin Decanoate, a longer-lasting drug given by intramuscular injection every two weeks. Doby considered himself to be fine, and refused to consent to the medication. Accordingly, Hickerson directed that the drugs be administered involuntarily. When a prisoner was to be involuntarily medicated, an ADC policy required notice to the prisoner and a hearing before a medications review panel. Hickerson did not follow the policy in

---

[1]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

[2]The Honorable Jerry Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

Doby's case, although she did obtain a second opinion from Dr. Walter Oglesby, another ADC psychiatrist, who concurred in her course of treatment.

Soon after the medications began, Doby experienced side effects. These included Parkinsonian symptoms, stiffness, and a shuffling gait. Hickerson testified that all of these symptoms were known side effects of antipsychotic medications. On March 20, 1990, Hickerson reported that Doby was suffering from severe side effects, although he was receiving two drugs, Cogentin and Benadryl, in an effort to counteract the symptoms. On April 10, Doby was still suffering from the side effects, and was also losing weight and suffering from a dry mouth. In response, Hickerson discontinued the Prolixin and prescribed another antipsychotic, Mellaril. On April 24, Doby was still experiencing severe side effects, and Hickerson discontinued the Mellaril. Doby's prescription for Haldol continued until June 19 (he apparently received emergency Haldol injections on three or four occasions in March and April). The side effects continued after the medications were discontinued, and at one point Doby lost thirteen pounds in thirteen days. Doby began to recover by late May, and reported himself "back to normal" by late June.[3]

Doby brought suit under section 1983, claiming that the involuntary administration of antipsychotics violated his right to due process under the Fourteenth Amendment.[4] After a two-day trial, the magistrate judge issued recommended findings and conclusions. Adopting the report in its entirety, the district court concluded that Hickerson's course of treatment did not comport with due process, and awarded Doby

---

[3] Doby received Haldol and Mellaril again in early 1991. The district court adopted the magistrate judge's recommended conclusion that Doby's claims based on the 1991 medication were nonmeritorious. Doby has not appealed that conclusion.

[4] Doby also claimed that the forced medication was cruel or unusual punishment under the Eighth Amendment. The court found for Hickerson on this claim, and Doby has not appealed. Nor has Doby appealed the court's judgment in favor of the other defendants, other employees of the ADC.

$9,500 in compensatory damages.  On appeal, Hickerson argues: (1) that she is entitled to qualified immunity; and (2) that the court's award of damages was an abuse of discretion.

## II.    DISCUSSION

### A.    Qualified Immunity

Under the doctrine of qualified immunity, a government official is immune from suit unless the complained of conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In other words, "in the light of pre-existing law the unlawfulness must be apparent."  Id.

In Washington v. Harper, 494 U.S. 210, 221-22 (1990), the Supreme Court held that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."   The Court concluded that the state's procedures in Harper comported with due process because they provided for an independent decisionmaker as well as for "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses."  Id. at 233, 235.[5]  We agree with the district court that

_____

[5]Harper relied in large part on the court's earlier decision in Vitek v. Jones, 445 U.S. 480 (1980).  In Vitek, the Court had held that the involuntary transfer of a prisoner to a psychiatric hospital implicated a due process liberty interest, and described the minimal procedural protections required to protect that interest.  Id. at 494-95.  In contrast to Vitek, however, the Court in Harper held that due process did not entitle a prisoner to counsel when he was to be involuntarily medicated.  Compare Harper, 494

Harper clearly established that these four procedural protections are minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner. The court found that Doby was not provided with these protections at any time. That finding is not clearly erroneous, and we conclude that Hickerson's course of treatment violated clearly established law.

As the district court noted, this case is somewhat complicated because Harper was decided on February 27, 1990, twenty-two days after Hickerson ordered Doby's medication. The district court concluded that Hickerson was entitled to qualified immunity for the medication administered prior to Harper. Hickerson argues that she is also entitled to qualified immunity for the treatment after Harper, because she did not become aware of the Harper decision until after she discontinued Doby's medication. Given the relatively short period of time after Harper that Doby's medication continued, Hickerson contends, it was unfair of the district court to conclude that a reasonable official in her position should have known that the forced medication violated due process.

In Harlow, the Court stated that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." 457 U.S. at 818-19. The Court noted, however, that an official may be entitled to immunity even for a violation of clearly established law if he or she "claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard." Id. at 819. As the district court noted, Harper "directly affected common procedures used in the ADC's mental health programs and was a published Supreme Court opinion most probably available . . . within a matter of days." Doby v. Hickerson, No. PB-C-91-534, slip op. at 13 (E.D. Ark. Jan. 24, 1996) (Proposed Findings and Recommended Disposition). Furthermore, one of the other defendants who worked at the SPU, Maggie Capel,

---

U.S. at 236, with Vitek, 445 U.S. at 495.

testified that the state attorney general's office had advised the unit that <u>Harper</u> was pending, and that the unit revised its policy on forced medications in anticipation of the Court's ruling. The district court found that Hickerson was aware of the policy but did not follow it. The district court concluded that, while Hickerson should not be imputed with immediate knowledge of <u>Harper</u>, "she should have known of its applicability . . . by the time she saw Plaintiff on March 20, 1990." <u>Id.</u> at 14. In our view, the district court drew a reasonable line, and correctly concluded that this case did not present "extraordinary circumstances" that justify qualified immunity despite a violation of clearly established law.

## B.    Damages

Hickerson urges us to reverse the district court's award to Doby of $9,500 in compensatory damages, arguing that Doby is at most entitled to nominal damages because he would have received the same treatment even if he had been afforded due process. We conclude that the district court did not abuse its discretion in awarding damages. <u>See</u> <u>Stevens v. McHan</u>, 3 F.3d 1204, 1207 (8th Cir. 1993) (damage award in a section 1983 action reviewed for abuse of discretion). Doby's involuntary medication was a "substantial interference with [his] liberty," <u>Harper</u>, 494 U.S. at 229. He was afforded virtually no procedural protections, and experienced severe side effects that continued for weeks after the medications were discontinued. The district court found that Doby was entitled to damages for the period of March 20 to June 19, 1990 (when Doby reported himself "back to normal"). This works out to slightly more than $104 per day. <u>Cf.</u> <u>McHan</u>, 3 F.3d at 1207 (noting decisions approving section 1983 damages in prisoner cases ranging from $25 to $129 per day). Given the significance of the liberty interest at issue here, this award was neither arbitrary nor excessive.

## III. CONCLUSION

For the reasons above, we affirm the district court in all respects.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.